## WILLIAM MELL v. J. L. BARNER.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF CUMBERLAND COUNTY.

Argued April 30, 1890—Decided May 19, 1890.
[To be reported.]

1. In an action by the maker of a judgment note, to recover damages from the payee's administrator for the levying of an execution for its collection after notice that it had been paid, the maker is not a competent witness to prove payment of the judgment to the deceased payee in the latter's lifetime: § 5, (e), act of May 23, 1887, P. L. 158.
2. Although a judgment in favor of a decedent was paid to him in his lifetime, and after his death the defendant therein so notified the plaintiff's administrator, the subsequent issuing of an execution thereon by the latter will not render him liable as for an abuse of legal process, in the absence that he acted maliciously or without probable cause.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 366 January Term 1890, Sup. Ct.; court below, No. 102 February Term 1889, C. P.

Returnable to January 7, 1889, William Mell brought trespass against John L. Barner, to recover damages for an alleged abuse of legal process by the defendant. The defendant's plea was not guilty.

At the trial, on November 21, 1889, the following facts were made to appear:

On May 11, 1878, William Mell signed and delivered to the firm of Long & Johnson a judgment note for $134.66, payable to the order of Long & Johnson, one year after date, with interest, and waiving exemption. At the same time he delivered to them a paid-up policy of insurance upon his own life, for $730, with an assignment thereof absolute upon its face. On August 19, 1880, Mell's real estate being advertised for sale under an execution issued upon a judgment in favor of one Dykeman, Ira Long, one of the members of the firm of Long & Johnson, obtained from his partner an assignment of said note and policy, and entered judgment on the note. He also

purchased the Dykeman judgment and two other judgments entered prior thereto, thus becoming the owner of all the judgment liens standing against Mell's property. The sheriff's sale proceeding, Long became the purchaser of the real estate, which he subsequently sold to Barner, the defendant in the present case. Mell had made a claim for the benefit of the debtor's exemption law, prior to the entry of the judgment for $134.66 in favor of Long, and had received, on account of the $300 exemption, the sum of $45 out of his personal property. The effect of entering the judgment, containing the waiver of the exemption, was to prevent Mell's receiving the remaining $255 from the proceeds of the real estate, and the moneys arising from the sale were all appropriated to the first and second liens which had been entered before the Dykeman judgment.

Sometime afterward Long died, and letters of administration on his estate were issued to Barner and another. The judgment for $134.66 then stood upon the record unsatisfied. In May, 1885, Mell had a conversation with Barner about that judgment, which, testifying upon his own behalf, he related as follows:

"A. . . . . I told Mr. Barner that the docket looked as though I owed the estate of Ira Long. I told him I did not owe that estate anything; that there was some judgment standing there open against me, it was injuring me, and I would like, as he was the legal representative, to have this judgment closed, and proposed to him to get my attorney and he could get his and we would come to Carlisle, and I could convince him in a very short time I did not owe that estate anything. Q. What did he say to that? A. He said to me, 'Don't say a word to the old man about it.' I told him that they were holding a life insurance policy that I thought ought to come to me, inasmuch as Ira Long used that note against me the second time. I thought it ought to come to me. He said to me, 'Don't say a word to the old man about that policy, you and me will get together some day and fix it up.' That was all the conversation we had in regard to it."

Upon the insurance policy appeared a pencil indorsement in the handwriting of Long, as follows: "Loan made May 11, 1878, for one year, and if not paid by that time this assignment to be absolute."

Statement of Facts.

The plaintiff being upon the stand, his counsel made the following offer:

Mr. Weakley: We propose to prove by the witness that this note was fully paid and the plaintiff was notified prior to the execution.

Mr. Hepburn: Objected to; he cannot prove the fact that that note is paid, by himself. If he has any other method of proving it he may do so, but the matters that passed between him and Long cannot be testified to by him in this case.

By the court: Objection sustained; exception.[1]

Mr. Weakley: We propose to ask the witness whether, at the time this note was given, an insurance policy on his life was not assigned to Long & Johnson to be collateral security for the note until it became due, and in case of non-payment at maturity the assignment was to become absolute in Long & Johnson; and that in addition to that assignment it was agreed that this assignment should be in full payment of the note.

Mr. Hepburn: Objected to, that the arrangements and contracts made between this witness and Ira Long in his lifetime cannot be supported by his own testimony. It is incompetent for the witness to testify to the facts set forth in the offer.

By the court: Objection sustained; exception.[1]

Barner testified that, in the conversation with the witness, Mell stated that the assignment of this policy was held simply as collateral security, and that the judgment had been paid otherwise than by the policy.

In July, 1885, when he was about to file an account of his administration in the estate of Long, Barner, the defendant, consulted with his attorney about the judgment against Mell and informed him what Mell had said about its payment, and was advised to settle the question by proceeding to collect the judgment. Accordingly Barner caused a writ of execution to be issued upon the judgment, under which the stock of goods in a confectionery store, kept by Mell, was levied on and taken possession of by the sheriff. Mell thereupon petitioned the court to open the judgment to let him into a defence. The court granted a rule upon Barner to show cause why the relief prayed for by Mell should not be granted, and stayed further proceedings upon the writ of execution. Subsequently the execution was set aside and an issue was framed to deter-

mine whether anything was due upon the judgment. On November 28, 1887, when the issue was called for trial, a settlement of the case was agreed upon and the following paper was executed by the parties, Barner, as administrator, and Mell, and filed to the number and term of the judgment:

" And now, November 28, 1887, above case having been called for trial, and it appearing that a policy of insurance, No. 106,384, on the life of William Mell, the defendant, for seven hundred and thirty dollars ($730.00), in the Equitable Life Assurance Society of the United States, payable at the death of the said William Mell to Catharine A. Mell, but was assigned to Ira L. Long and John E. Johnson in payment of the claim embraced in this judgment, by consent, in open court, judgment is entered for the defendant."

Testimony for the plaintiff tended to show that during the time his store was closed by the sheriff, a large quantity of perishable goods therein became totally spoiled, that the plaintiff's credit was injured by the levy upon the store, and the interruption of his business caused him to suffer a considerable loss of custom.

At the close of the testimony, the court, STEWART, P. J., 39th district, specially presiding, charged the jury:

We propose to relieve you of any further consideration of this case by instructing you, as a matter of law, that the plaintiff has failed to make out such a case as will entitle him to recover in this action, and your verdict will be for the defendant.

Ira L. Long died on July 6, 1881. At the time of his death there was standing upon the records of this court a judgment in his favor against William Mell, the plaintiff in this suit, for the sum of $134.66, with nothing appearing upon the record to show that he was not entitled to the whole amount thereof. John L. Barner, the defendant here, as Long's administrator, succeeded to his rights. To enforce payment of this judgment he caused a writ of fieri facias to be issued, by virtue of which the sheriff levied upon the stock of merchandise of William Mell, the plaintiff. The stock was held in the custody of the sheriff from August 12, 1885, to September 24, following. The writ of execution was stayed by the court, and the property subsequently released, but, as the testimony shows, in a reduced or damaged condition.

Opinion of Court below.

In the course of subsequent proceedings the judgment upon which the execution issued was satisfied. How, or in what manner it is not important or material to consider in the view we take of this case. Mr. Mell then brought this action to recover damages from Barner for malicious use of legal process, alleging that he owed nothing upon the judgment, that it had been fully paid or satisfied. He says that he so informed Barner before the execution issued. You have this single fact that he denied to Barner any liability upon the judgment; [he has adduced nothing whatever to show or from which you could infer either malice or want of probable cause upon the part of Barner. Could we say that Mr. Barner, as administrator of Ira Long, was not bound to issue an execution upon the judgment, which stood upon the records of the court, simply because the defendant in the judgment denied that he was liable for it? It was Mr. Barner's duty to press for the collection of that judgment, and the simple statement on the part of the plaintiff that he informed the defendant in this action that he paid the judgment, would not be sufficient to relieve him from the payment of it. It was Mr. Barner's duty to proceed to collect that judgment.] [2]

[As we said before, there is but the one single fact before you, the denial on the part of the plaintiff of his liability for the payment of that judgment; and there is nothing in that from which you can infer malice or want of probable cause on the part of the defendant in this case.] [3] It is only in case he would show that the defendant acted with malice and without want of probable cause that he would be entitled to recover at all. Under this state of facts, gentlemen, we feel ourselves bound to say to you that your verdict must be for the defendant.

The jury rendered a verdict for the defendant as directed. A motion for a new trial, after argument was overruled by the court, STEWART, P. J., in an opinion in part as follows:

Upon the evidence being concluded, defendant's counsel asked us to withdraw it from the jury and give binding instructions that the verdict should be for the defendant. This we did after a careful review of the evidence. We are now asked for a rule to show cause why a new trial should not be

Opinion of Court below.

granted, and in support of this motion it is urged that error was committed: 1. In rejecting the offer to show that when the single bill was given it was agreed that the policy of insurance, which accompanied it as collateral, was to become the property of the payees if the note was not paid at maturity, and was to be accepted by them in such event as payment in full. 2. In withdrawing the case from the jury and directing a verdict for the defendant. A further reason offered for the rule is after-discovered evidence.

First, with respect to the action of the court. The offer of evidence above indicated was rejected, not so much for the reason expressed in the objection, which appears upon the record, as because of its immateriality, which was clearly stated at the time.

Were this an issue between the original parties to the note transaction, the evidence would of course be most important, but the action being against the administrator of the payee, of what possible consequence can it be that any such agreement was made, unless it be shown that the defendant had knowledge of the fact? The offer did not in any way connect the defendant with the alleged agreement, nor was any purpose expressed of following it with evidence to show knowledge on his part. He was sued for a malicious use of legal process. The offer virtually was to show that Long, the plaintiff in the judgment, had knowledge that the debt was paid, because he had agreed with the defendant that it should be canceled by the acceptance of the insurance policy if not actually paid at maturity. But it would avail nothing to show knowledge on Long's part. The action was not against him but against Barner, who, as Long's administrator, had caused the execution to be issued. It may be said that the offer was only a first step, but we had no promise that any step further in the direction of this defendant was to be taken. We see no greater relevancy in the offer now than we did upon the trial.

But assuming all that was contained in the offer to have been established in the case, the result could not have been different. We felt constrained to take the case from the jury because the evidence wholly failed to show malice on the part of the defendant. It is not pretended that there was any direct evidence of malice. The effort was to show certain facts from

which it might be inferred. Now, actual knowledge on Barner's part that the judgment was paid, and that he therefore had no right to issue execution, became absolutely essential, for without such knowledge he was in the exact line of his duty in proceeding to collect the judgment. It is not as though Long had issued the execution, for he being the plaintiff would be charged with a knowledge of payment. Barner stands in a wholly different position. It was for the plaintiff to show, as against him, not only that the judgment was paid, but that he knew it was paid. Upon satisfactory evidence showing these facts the jury might very properly infer malice; but not only did the evidence with respect to Barner's knowledge fall short of being satisfactory, but there was, in point of fact, no evidence at all, and a verdict for the plaintiff, under the circumstances, could not have been sustained.

The plaintiff testified that he had told Barner that the judgment was paid, and that he had proposed to him that they would get their respective attorneys together and he would then establish the payment. But this falls very far short of the knowledge which the law requires in such cases. The administrator was not bound to stay his hand, simply because the defendant in the judgment claimed that he had paid it to the plaintiff in his lifetime. On the other hand, he was at liberty to disregard a notice such as this, if there was nothing else to put him on his guard. If executors and administrators can proceed only at their peril to enforce payment, after they have received notice from the debtor that the claim has been paid, the settlement of dead men's estates would be attended with risks sufficient to deter prudent men from accepting such trusts.

In this case, the administrator had upon the one side a judgment ripe for execution, with nothing on the record to indicate satisfaction or credit, or that it was open to any question whatever; and, upon the other, nothing but the unsupported assertion of the debtor, who in an issue upon this question could not himself be a witness, that the debt was paid. To say that he was bound to investigate further before proceeding, is to shift the burden from the one upon whom it properly rests, to the shoulders of one who has all the presumptions in his favor. If there was any evidence tending to show knowledge on the part of Barner beyond the notice from the debtor we have failed

to discover it.   The view we take in regard to the duties and
liabilities of personal representatives of decedents is fully sus-
tained by the Supreme Court in Wengert v. Beashore, 1 P. &
W. 238. . . . .

—Thereupon the plaintiff took this appeal, specifying that
the court erred:

1. In refusing the plaintiff's offers.[1]

2, 3. In charging as set forth in [ ] [2] [3]

4. In directing a verdict for the defendant.

*Mr. J. M. Weakley* (with him *Mr. J. R. Miller*), for the ap-
pellant:

1. The error in rejecting the plaintiff's offer is apparent.
Mell, in his own right, sued Barner for a trespass committed
by the latter.   No one but the parties to the record could be
affected by the result of the suit.   Both of these were alive at
the time of the trial, as well as at the time of the injury.   The
fact that Long was dead when the cause was tried, did not
bring Mell within the exception to competency under clause
(*e*), § 5, act of May 23, 1887, P. L. 158.   It was impossible
that Long's estate could be affected by the result of this suit.
The direction to find for the defendant must have been based
upon the proposition that an administrator is required to reject
all evidence and notice of the payment of a judgment in favor
of his decedent, if it stand upon the record unsatisfied, and
that nothing but direct proof of malevolence toward the de-
fendant in the judgment can support an action against him for
issuing an execution upon a judgment which in fact is paid.
The proposition is certainly untenable.   The law requires of
an administrator merely common prudence and caution in pre-
serving the property and rights of his decedent, and no more.
From Palmer v. Jones, 1 Vern. 144, to Stewart's App., 110
Pa. 425, this doctrine has uniformly been held and applied.

2. Like a sheriff, an administrator is not compelled to disre-
gard a notice which would bind him if he were acting for him-
self.   He is not required to seize the property and destroy the
business of one who is not a debtor to his decedent, to ascer-
tain whether the statement of that person that he owes noth-
ing, is true.   The notice to Barner that this note had been
paid to Long was direct and positive, and if he had satisfied

the judgment, as Mell requested, he could not have been surcharged with it. The most that he would have been justified in doing against Mell, would have been to issue a writ of scire facias and permit Mell to make defence. If he had issued the execution without previous demand of payment, or inquiry as to the condition of the judgment, he would have been liable for any injury done by the levy, upon its turning out that the judgment was in fact paid; but, issuing it, as he did, after notice, and having in his possession a valid security for several times the amount apparently due on the judgment, he is liable, on the facts proved, for malicious abuse of process: Milliken v. Brown, 10 S. & R. 191; Berry v. Hamill, 12 S. & R. 212; Barnett v. Reed, 51 Pa. 196; Mayer v. Walter, 64 Pa. 283; Kramer v. Stock, 10 W. 115.

*Mr. E. W. Biddle,* for the appellee, relied upon the opinion of the court discharging the rule for a new trial.

PER CURIAM:

The testimony referred to in the first assignment was properly rejected. If we concede that the facts offered to be proved were competent evidence, the offer was to prove them by an incompetent witness. Ira Long, one of the parties to the note, was dead; the witness was the maker of the note, and a party to the record. The lips of Long were sealed by death; the lips of the witness were sealed by the law.

The second and third assignments allege error in the charge of the court. The extracts given do not disclose any. There was nothing in the case to show that the defendant acted with malice, or without probable cause. The note of Mell came into defendant's hands as executor of Long. It was an asset of the estate, with nothing to show payment upon its face. It was his duty to attempt to collect it, in the absence of actual knowledge on his part that it had been paid. Had he neglected this duty, he would have been liable to a surcharge in his accounts, which, if not successful, would have subjected him to litigation and expense. He was not bound to incur this peril. The only sure way to avoid it was to proceed to collect the note, when, if Mell had paid it, he could take defence and show it.

Statement of Facts.

As the plaintiff had not established a case to go to the jury, it was not error in the court below to direct a verdict for the defendant.

Judgment affirmed.